THOMAS R. LINCH ET AL. V. STATE, EX REL. GEORGE W. ECKLES.

[FILED NOVEMBER 18, 1890.]

1. **Mandamus:** MAY BE GRANTED AT CHAMBERS. Under the provisions of the statute, sec. 57, ch. 19, of C. S., a judge of the district court sitting at chambers at any time and place within his judicial district has the power and jurisdiction to hear and determine an application for a writ of *mandamus*, and such

power and jurisdiction include the allowance of a peremptory writ of *mandamus.*

2. **Pleading.**   All material allegations, well pleaded in a petition and not denied or answered unto in the answer, will be deemed and taken as true.

ERROR to the district court for Grant county.   Tried below before HARRISON, J.

*O. A. Abbott*, for plaintiffs in error.

*Kirkpatrick & Holcomb, contra.*

COBB, CH. J.

This action was *mandamus* brought in the district court of Grant county and tried before the Hon. T. O. C. Harrison, judge of the ninth judicial district, at his chambers, in the city of Grand Island, in Hall county.   The petition contains the following allegations of fact:

"1. That the relator is a duly qualified elector, citizen, and taxpayer of the county of Grant and state of Nebraska.

"2. That on about the 15th day of April, 1888, the governor of the state, on the petition of citizens of Grant county, appointed Thomas R. Linch, James Forbes, and Romane Westover special commissioners, and John S. Dellinger special county clerk of said county; that each of said officers took the oath prescribed by law and entered upon the discharge of their duties as said officers, according to law, and that on the 28th day of May, 1888, said special county commissioners and county clerk called a special election to elect county officers for said county and to vote upon a site for permanent county seat for said county of Grant.

"3. That said special commissioners and clerk divided said county of Grant into four voting precincts as follows, to-wit: Whitman, Hyannis, Ashby, and Collins, and that

at the special election held in said county on the 31st day of July, 1888, pursuant to the call of said special commissioners, the following legal votes were cast in the several precincts, to-wit:

"4. That there were cast in the precinct of Whitman, thirty legal votes for the town of Whitman for permanent county seat, and twenty-eight legal votes for Milton Dodds for county treasurer of said county, and two votes for James Forbes for county treasurer, 'as returned by the board of canvassers of said precinct.'

"5. That at said special election there were cast in the precinct of Ashby nine legal votes for the town of Whitman for permanent county seat and six votes for the town of Hyannis for permanent county seat of said county, and fifteen legal votes for Milton Dodds for county treasurer of said county, 'as returned by the board of canvassers of said precinct.'

"6. That at said special election there were cast in the precinct of Collins twenty-one legal votes for the town of Whitman for permanent county seat and twenty eight votes for the town of Hyannis for permanent county seat, and twenty-one legal votes for Milton Dodds for county treasurer and twenty-eight votes for James Forbes for county treasurer, 'as returned by the board of canvassers of said precinct.'

"7. That at said special election there were cast in the precinct of Hyannis twenty-four votes for Hyannis for the permanent county seat of said county, and twenty-four votes for James Forbes for county treasurer of said county, as returned by the board of canvassers of said precinct of Hyannis; 'a copy of said canvass is hereto attached, marked "Exhibit A," and made a part hereof.'

"8. That there were cast in said county at said special election in the several precincts sixty legal votes for the town of Whitman for permanent county seat and fifty-eight votes for the town of Hyannis for permanent county

seat, and no more, and sixty-four votes for Milton Dodds for county treasurer, as returned by the precinct canvassing board.

" 9. That there were cast at said special election in the precinct of Collins for the town of Hyannis for county seat, two illegal and unlawful votes, that were duly canvassed and counted for the town of Hyannis for county seat, in this that they were cast by one Walter Broking and one William H. Rothwell, who had not resided in the state of Nebraska but five months.

"10. That there were cast at said election in the precinct of Ashby for the town of Hyannis for county seat six illegal votes that were cast by persons that did not reside in Grant county and had only been in said county twenty-one days, and their names are unknown to this affiant. That said votes were duly counted for the town of Hyannis by the precinct canvassing board.

"11. That there were cast at said election in the precinct of Hyannis for the county seat at the town of Hy-annis four illegal votes duly counted and canvassed by the board for the town of Hyannis, to wit: G. G. Pickering, H. R. Dellinger, and Michael Yokum who were not citizens and residents of Grant county, and one vote cast by ———, who was not a citizen of the United States and had never declared his intention to become one, and said illegal votes were all counted for the town of Hyannis and given in the number of votes given above except those cast in the precinct of Ashby.

"12. That on the 7th day of August, 1888, said special county commissioners and county clerk met at the town of Hyannis, temporary county seat, to canvass the votes cast at said special election, and then and there duly canvassed and declared the returns of the votes cast at said election in the precincts of Whitman, Collins, and Hyannis, in said county, and unlawfully, wrongfully, and fraudulently threw out, disregarded, and refused to canvass the votes cast in the

precinct of Ashby in said county, as returned by the precinct canvassing board, though often requested so to do, and still neglect and refuse to canvass said votes and to declare the result, and this without any color of right or authority of law so. to do, and fraudulently and unlawfully declared the town of Hyannis the permanent county seat and the said James Forbes to be the duly elected county treasurer of said county. A copy of the record of said commissioners is hereto attached, etc.

" 13. That the town of Whitman received a majority of all the votes cast at said election for permanent county seat, and Milton Dodds received a majority of all the votes cast at said election for county treasurer, and that the town of Whitman should be declared the permanent county seat, and that Milton Dodds should be declared the duly elected county treasurer of said county.

"With prayer that the said board of county commissioners and county clerk be compelled to reassemble and canvass the votes cast in the county at said election, and especially the votes cast in Ashby precinct, as they are by law required, and that they may be required to declare the town of Whitman the permanent county seat, and to declare Milton Dodds the duly elected county treasurer of said county of Grant, and for costs."

The defendant John S. Dellinger, answering for himself, as well as for his co-defendants, "admits that there was a special election at the time mentioned in Grant county, and denies each and every the several matters and things alleged in paragraphs 3, 4, 5, 6, 7, 8, 9, 10, and 11 of the petition.

"Answering paragraph, or cause of action No. 12, the defendant denies that any legal election, or any election, was held in Ashby precinct at said special election. But alleges that the said special commissioners in specifying the place of voting in said Ashby precinct selected the house of H. J. Kinley, two and one half miles west of

Ashby station; that notices were posted of such fact, and one of said notices was posted on said Kinley's house; that no election was held at said house, nor was there any pretense of holding an election there, nor in or about it, or at any place on the farm or land of said Kinley; nor did any judge or clerk of election act or receive any votes or ballots at the place so designated, nor were any polls opened at said place on said 31st day of July, 1888; but that several evil-minded and wrongly disposed persons and illegal voters, in order to disturb the law abiding citizens of said county, congregated together at a place some two and a half miles distant east of the said Kinley house, a place that had not been designated as the place of election, and wholly unknown to the legal voters of said Ashby precinct, fraudulently and unlawfully pretended to receive votes and ballots for several officers to be voted for, and for the places designated for county seat of Grant county, and received, or pretended to receive, some fifteen votes without any kind of ballot-box other than a cigar-box, which said box was unlocked and without any means of fastening, and was not fastened at any time, but was opened and shut at pleasure during the day, and votes taken therefrom and changed at the will of the pretended board; that at the said pretended election in said precinct there was but one book for the names of the voters, and the said book, when returned to the county clerk to be opened by the board of canvassers, was found to be in such an irregular, changed, and scratched condition as to be unintelligible; that the persons shown to have acted as judges and clerks were not sworn before any justice of the peace, or any officer known to the law, and the papers returned were not, and could not be, recognized as the returns of an election held at the place designated to hold said election, in Ashby precinct, in said county—this return being the one complained of by the plaintiff; that out of the fifteen votes alleged to have been cast in said Ashby precinct, ten of them were illegal,

for the reason that said votes were cast by persons who were not residents of Grant county.

"3. That, in the event that said board of canvassers was recalled together as prayed for, the result of the said election would not be changed, for the reason that in Whitman precinct all votes cast in said precinct were for Whitman; that seven of said votes so as aforesaid cast were cast by illegal voters who were not residents of Grant county; five of said persons are named as follows: Milton Dodds, Dean Durham, M. A. Fairchild, S. A. Weaver, and Frank Ellswick; that in Collins precinct three illegal votes were cast for Whitman, by C. H. Manning, Bert Procter, and B. Swingel; with prayer for judgment."

The defendants also filed a supplemental answer to the said petition, in which they allege: "That, since the institution of said suit, and since the answer hereto filed therein, a new election has been called and had in the said county for the purpose of locating a county seat of said county by common consent as well of the parties to this suit as of all the citizens of said county, parties in said election, and agreed to abide by the result thereof; that said agreement was made and said election held in pursuance thereof for the purpose of amicably adjusting and settling all matters in controversy in this case, and that as a result of said election the county seat of said county has been located at the town of Hyannis, that being the place designated as having been chosen by the board of canvassers of said county."

To which supplemental answer the plaintiff filed a demurrer, which was by the court sustained. Thereupon the cause came on to be heard, upon the objection of the respondents, to the jurisdiction of the judge to try and determine said cause at his chambers, whereupon the said objection was overruled. And thereupon the cause, being submitted, was taken under advisement, and afterwards a peremptory writ of *mandamus* was awarded as prayed.

The defendants assign the following errors:

"1. The court (judge) had no jurisdiction to hear, try, or determine said matter at chambers.

"2. The court (judge) had no jurisdiction to hear, try, or determine said matter in the county of Hall.

"3. The court (judge) had no jurisdiction to hear, try, or determine said matter at any place except at the county seat of Grant county, and at the regular term of court holden in and for said county.

"4. The court erred in finding the issues joined in favor of the defendant in error and against the plaintiff in error.

"5. Under the facts and circumstances of the case the defendant in error was not entitled to a writ of *mandamus*.

"6. The judgment of the court should have been for the plaintiffs in error and not for the defendant in error, according to the law of the land."

The first, second, and third assignments will be considered together.

To the proposition, that a district judge is without jurisdiction, or power, to hear and determine an application for a *mandamus* at his chambers, within a county other than that of the respondent, etc., counsel cite secs. 39 and 57 of ch. 19, Comp. Stats. They also cite sec. 5 of ch. 71, Comp. Stats., 653, of the Civil Code, and sec. 9 of art. 6 of the constitution of the state.

Secs. 39 and 40, chapter 19, Comp. Stats., were passed as a part of an act entitled "An act to amend chapter 13 of the Revised Statutes of 1866, entitled 'Courts,' approved February 27, 1877." That act, so far as it purported to confer upon district judges the power and jurisdiction to "sit at chambers anywhere within his district for the purpose of * * * 8. Hearing an application for *mandamus*" was considered by this court in the case of *State, ex rel., v. Pierce County*, 10 Neb., 476. In that case it was held that under our present constitution, section 11, article 3, the legislature could not by an amendatory act confer

such power and jurisdiction upon the judges of the district courts. In the opinion by Judge LAKE we find the following language: "The act of 1866, to which this amendment was made, has a very restrictive title, it being simply 'Courts,' and was passed when no such limitation upon the discretion of the legislature in the enactment of laws as the foregoing existed. In view of that limitation [the provision of the constitution above cited], it would hardly be contended  *  *  *  that under this title the legislature could, by an original enactment, confer upon judges of courts during vacation any jurisdiction whatever. And if the legislature could not do this directly by means of an original act, surely it could not be done by an amendment of this one wherein, with the single exception of the district court judges being, by sec. 13, made conservators of the peace, there is not a solitary provision investing them with judicial power."

At the next session of the legislature, after the above opinion was filed and published, that body, doubtless with the above opinion in full view, passed the act of March 2, 1881, which now constitutes section 57 of chapter 19 of the current compilation. The language of this act is such as to clearly invest district judges, sitting at chambers anywhere within their respective districts, with the power and jurisdiction in question, without regard to the county of such district into which such jurisdiction is to extend or operate. And it was so held in the case of *Clark v. State,* 24 Neb., 263.

The remaining assignments may be considered together, as they are all directed to the merits of the finding and judgment upon the evidence.

There was quite a volume of testimony taken in the form of depositions. Nearly all of this testimony was stricken out upon the motion of either party. But nevertheless the depositions thus stricken out were attached to the bill of exceptions, and counsel in the brief treats it

as having been before the district judge, and considered by him in deciding the case; and as being before this court for the purposes of this review.    I might possibly take this view of the matter were it not that the certificate of Judge Harrison, of his allowance of the bill of exceptions, is before me, in which he specifies the evidence which was before him upon the trial, to-wit, on the part of the plaintiff, the depositions of Sidney Manning, A. R. Elswick, and George W. Eckles, and a certified copy of the proceedings of the county board of said county, and upon the part of the respondents the deposition of H. R. Dellinger, and a map of the county of Grant, showing the locations of the various precincts therein, and that the same was all the evidence produced at the trial.

Sidney Manning is the county clerk of said county elected at said special election. He introduced and delivered to the county judge taking his deposition, a certified copy of the record, made by the special commissioners, of the canvass of the votes cast at the said special election, which was received in evidence.    He also testified that he had in his possession the ballots and poll books showing the votes cast at the said special election; but that said ballots and poll books were under seal as the same were delivered to him by John S. Dellinger, late special county clerk of said county, and he declined to open them or to introduce them in evidence.

A. R. Elswick testified that he resides at Whitman, is engaged in keeping a hotel, and in the practice of the law; that he is acquainted with Thomas R. Linch, who was one of the special commissioners for Grant county, and who canvassed the election returns of the special election held July 31, 1888; that witness had a conversations with him with regard to canvassing the returns of Ashby precinct. I quote his testimony: "I have had conversations with him in regard to the canvass of the Ashby precinct vote, and he has told me at about three different times that that vote

was canvassed and had given two majority for Whitman, and was declared so by the special commissioners. And he said then that Mr. Dellinger found that Whitman had a majority, and he claimed that he had business in Lincoln and that he had to go to Lincoln, and they adjourned to the ninth day from the closing of the polls. He said he did not know what the business was or what he went for." He also stated that after Mr. Dellinger returned the commissioners met according to adjournment and that they sealed up the poll books and the ballots and said they wouldn't count Ashby precinct at all; that these conversations—the last and most particular one—took place about four weeks before the time of the taking of witnesses' depositions, and occurred at witnesse's house. Witness also testifies that he knows Romane Westover, who also was one of said special commissioners; that he had a conversation with him with reference to the canvass of Ashby precinct; that they had counted the vote of Ashby precinct, and that it was declared in favor of Whitman; that it gave Whitman a majority of two and was declared so by the commissioners. Then Mr. Dellinger went to Lincoln. When he came back they sealed up the ballots and the poll books from Ashby precinct, and would not count it, which he said gave a majority to Hyannis. He said, as to the condition of the returns from Ashby precinct, that they were somewhat erased and scratched up, but they were plain enough to know what they were and what they meant."

Geo. W. Eckles testified that he was one of the plaintiffs; that he resided two miles east of Whitman; that he was acquainted with Romane Westover, who was a special commissioner of said county. He said he was one of the special commissioners who made a canvass of the special election on the 31st day of July; heard him make a statement concerning the returns of the canvass of the vote of Ashby precinct. He said that they counted them fifteen

votes in Ashby precinct, nine votes were cast for Whitman for permanent county seat and six for Hyannis; that Whitman had the county seat by a majority of two at that time.   Then he said they threw it out on account of its being erased, erasing being done in the writing of the names in the poll book.

I here copy so much of the proceedings of the special commissioners, as a board of convassers of said special election, as is deemed relevant.

"Aug. 3, 1888.—Board met pursuant to adjournment; all members present.   On motion board adjourned to 1 o'clock.

"1 P. M.—Board met pursuant to adjournment; all members present.   On motion board proceeded to canvass votes.   On motion by Forbes, seconded by Westover, it was decided to not canvass the votes of Ashby precinct, for the reason that the said voting place in Ashby precinct was moved from the place designated by the county commissioners, two miles, without authority of the board, or without cause and against the law.   Said moving constituting such an irregularity that the vote could not be legally canvassed.   Motion carried.   On motion board then adjourned to 1 P. M. (sic).

"1 P. M.—Board met pursuant to adjournment, and finished canvassing votes.   Clerk was instructed to write out notices, and have same put up declaring Hyannis the permanent county seat, it having a majority of votes."

The respondents offered in evidence the deposition of John S. Dellinger, in which he testified that he resided in Hyannis, and was acquainted with the county of Grant. Whereupon he presented a map of said county, which he declared to be a correct representation of said county, and the several precincts therein, as established by the board of special county commissioners; that he was acquainted with some of the legal voters of Ashby precinct, in said county; that they were all, with the exception of two, in the em-

ployment of the B. & M. Railroad Company; that one of
these, Mr. J. H. Kinley, resided about two and a half
miles west of Ashby—that is, his first residence was at that
point; that the other, Mr. Markland, lived in the south-
west part of the county, probably about fourteen miles
from the place where the election was held; that witness
did not know whether Markland voted or not; that wit-
ness had seen him several times, and believed it was in
April he saw him first; that was at the house of Mr.
Yates; that he was out of the county at that time, being
before he went onto his claim in Grant county. He also
testified that he did not know who made the map which
he presented; that it was not absolutely correct, but is a
good representation of the way the precincts lie; that this
man Markland's family had resided a number of years in
the southern part of the state, according to Mrs. Yates's
story, who is a part of the family, witness did not know
the fact himself; that Mr. Yates then lived north of
Alkali lake, near the county line of Cheyenne county.
"Some think he is on this side of the line, and some think
on the other side."

The purpose of the introduction of the map in evidence
is not stated, nor is it apparent. So far as the evidence
before the district judge is concerned, I do not think that
it was sufficient to sustain the issuance of a writ of *man-
damus;* but I do not deem it necessary to discuss the evi-
dence, because an examination of the pleadings impels me
to the conclusion that under them no evidence whatever
was necessary, but that upon the pleadings alone the judge
was justified in issuing the writ. The petition and in-
formation of the plaintiff or relator consists of thirteen
paragraphs or causes of action. The defendants or re-
spondents, by their answer, deny all of the facts, matters,
and things alleged in the said paragraphs or causes of ac-
tion, numbered from one to eleven inclusive, except the
allegation that there was a special election at the time

mentioned, in Grant county, which they admit. The allegations contained in the twelfth paragraph or cause of action are not specifically denied by the answer, but are rather confessed and sought to be avoided by the allegations of other facts, but with what degree of success it is unnecessary to decide, as there was no evidence tending to prove such facts before the judge. The thirteenth paragraph of the petition was not denied by the answer, nor was any notice, whatever, taken of it or its allegations by the defendants. By reference to the statements of the pleadings in the forepart of this opinion, it will be seen that the said thirteenth paragraph contains the allegation "that the town of Whitman received a majority of all the votes cast at said election for permanent county seat." This allegation contains the very gist and essence of the petition and of the plaintiff's case. It was not denied, nor, as I have already intimated, was it proved upon the trial. This allegation, had it been denied by the answer, must have been proved to enable the plaintiff to recover, but being fairly well pleaded and not denied, the facts alleged stand as true without proof. That there was an election for the location of a permanent county seat for said county is alleged and admitted. The record of the canvass of the votes cast at said election shows that the returns of the votes cast in one precinct were rejected and thrown out, and that thereupon Hyannis was, by the record, declared to have a majority of the votes cast. The object and purpose of this proceeding was, in substance, to correct that record. As we have seen, the pleadings settle the point against the record made by the county commissioners. The judgment of the district court is therefore

AFFIRMED.

THE other judges concur.